IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED
2017 MAY -4  P 12: 13

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

ANDREW HERRING,

    PLAINTIFF,

V.

HEALTH SERVICES INC,

    DEFENDANT.

CIVIL ACTION NO. 2:17-cv-291

JURY TRIAL DEMANDED

## COMPLAINT

### I. JURISDICTION

1. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1334(4), 1343(4), 2201, 2202 and pursuant to the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq,* and the Age Discrimination in Employment Act, 29 U.S.C. § 621. The jurisdiction of this Court is invoked to secure protection for and to redress the deprivation of rights secured by the ADA.

2. Plaintiff timely filed his charge of discrimination with the Equal Employment Opportunity Commission (EEOC) within 180 days of the last discriminatory act (Exhibit A). Plaintiff further filed this lawsuit within ninety (90) days after receipt of the right-to-sue letter issued by the EEOC (Exhibit B).

### II. PARTIES

3. Plaintiff, Andrew Herring, (hereinafter "Plaintiff") is a resident of Montgomery, Montgomery County, Alabama, and performed work for the Defendant in the counties composing the Middle District of Alabama during the events of this case. Thus pursuant to 28 U.S.C. § 1391(b), venue for this action lies in the Middle District, Northern Division.

4. Defendant, Health Services Inc. (hereinafter "Defendant"), is a company registered and doing business in the State of Alabama and has sufficient minimum contacts with the State of Alabama that it is subject to service of process in Alabama. Defendant is an entity subject to suit under 28 U.S.C. § 1331, 29 U.S.C § 621, 42 U.S.C. § 2000e, and 42 U.S.C. § 12101, *et seq.* Defendant employs at least twenty (20) persons. Therefore, this Court has personal jurisdiction over Defendant.

### III. STATEMENT OF FACTS

5. Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1-4 above.

6. Plaintiff is a white male.

7. Defendant hired Plaintiff on or about September 21, 2013.

8. During 2015, Plaintiff's physicians diagnosed Plaintiff with vocal cord cancer and recommended a course of treatment that included thirty-four (34) radiation treatments through October 2015.

9. As a result of Plaintiff's vocal cord cancer, Plaintiff's vocal cords were permanently altered such that the major life activity of speaking and communicating is different than compared to an average person in the general population.

10. Plaintiff's vocal cord cancer resulted in a perpetual hoarseness of voice.

11. Even after treatment for his vocal cord cancer, Plaintiff could perform his job duties without a reasonable accommodation; however, Plaintiff sought to perform his job with a reasonable accommodation.

12. Defendant terminated Plaintiff's employment on July 21, 2016.

13. At the time Defendant terminated Plaintiff's employment, Plaintiff was 64 years of age.

### IV. COUNT ONE – ADA – Disability Discrimination

14. Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1-13 above.

15. Defendant employed Erica Owens.

16. Owens served as Plaintiff's supervisor for a period of time.

17. Plaintiff informed his supervisors Erica Owens about his vocal cord cancer.

18. Erica Owens informed Plaintiff that he needed to quit and "go ahead and retire."

19. Defendant employed Sheba Easterling.

20. Easterling served as Plaintiff's supervisor for a period of time.

21. Plaintiff informed his supervisors Easterling about his vocal cord cancer.

22. Easterling also informed Plaintiff that he needed to quit and "go ahead and retire."

23. Plaintiff informed Easterling and Owens that he did not want to retire.

24. Shortly thereafter, Easterling and Owens began to harass Plaintiff by issuing disciplinary write-ups in an effort to terminate Plaintiff's employment.

25. Easterling used Plaintiff a disciplinary write-up because of his disability as there were complaints from customers that Plaintiff was difficult to be heard as well as other employees.

26. Defendant failed to engage in interactive process to determine if there was a reasonable accommodation available for that issue.

27. Defendant terminated and/or constructively discharged Plaintiff's employment for the claimed reason that he did not report damage to the front door of the department where Defendant assigned Plaintiff to work.

28. There are two doors to the department.

29. On the day the damage was discovered, Plaintiff entered through the back door and did not have an obligation to unlock the front door until 7:30 a.m.

30. Plaintiff to work arrived at approximately 7:20 a.m.

31. Upon arrival and before 7:30 a.m., Easterling confronted Plaintiff about the damage to the front door.

32. Easterling issued Plaintiff a disciplinary write-up and terminated Plaintiff's employment for not reporting the damage, even though Plaintiff had never seen the damage and it was not time for him to open that door

33. In terminating Plaintiff's employment, Defendant did not follow its own policy regarding progressive discipline.

34. Defendant did not terminate a non-disabled employee, Kim Davis, that was issued numerous disciplinary write-ups.

35. But for Plaintiff's disability, Defendant would not have terminated Plaintiff's employment.

36. In terminating Plaintiff's employment, Defendant violated the ADA because of Plaintiff's disability.

37. As a result of Defendant's violation of the ADA, Plaintiff has been damaged, suffering loss of pay, benefits and mental anguish.

## VI.   COUNT TWO – ADA – Failure to Accommodate

38. Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1-37 above.

39. Plaintiff asked Defendant to provide for a volume enhancer to assist with his telephone communications with clients.

40.     Plaintiff made this request to Mary Thornton.

41.     Thornton's sole response was "I'll check into it."

42.     Defendant failed to engage in interactive process to determine if there was a reasonable accommodation available for that issue.

43.     As a result of Defendant's violation of the ADA, Plaintiff suffered mental anguish.

## VII.  COUNT THREE – AGE Discrimination – ADEA

44.     Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1-43 above.

45.     Defendant hired Plaintiff on or about September 21, 2013.

46.     Defendant terminated Plaintiff's employment on July 21, 2016.

47.     Defendant terminated and/or constructively discharged Plaintiff's employment for the claimed reason that he did not report damage to the front door of the department where Defendant assigned Plaintiff to work.

48.     There are two doors to the department.

49.     On the day the damage was discovered, Plaintiff entered through the back door and did not have an obligation to unlock the front door until 7:30 a.m.

50.     Plaintiff to work arrived at approximately 7:20 a.m.

51.     Upon arrival and before 7:30 a.m., Easterling confronted Plaintiff about the damage to the front door.

52. Easterling issued Plaintiff a disciplinary write-up and terminated Plaintiff's employment for not reporting the damage, even though Plaintiff had never seen the damage and it was not time for him to open that door

53. In terminating Plaintiff's employment, Defendant did not follow its own policy regarding progressive discipline.

54. Defendant did not terminate a younger employee, Kim Davis, that was issued numerous disciplinary write-ups.

55. But for Plaintiff's age, Defendant would not have terminated Plaintiff's employment.

56. In terminating Plaintiff's employment, Defendant violated the ADEA because of Plaintiff's age.

57. As a result of Defendant's violation of the ADEA, Plaintiff has been damaged, suffering loss of pay, benefits and mental anguish.

## VIII. COUNT FOUR – Sex Discrimination – Title VII

58. Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1-57 above.

59. Plaintiff is a white male.

60. Defendant hired Plaintiff on or about September 21, 2013.

61. Defendant terminated Plaintiff's employment on July 21, 2016.

62. Defendant terminated and/or constructively discharged Plaintiff's

7

employment for the claimed reason that he did not report damage to the front door of the department where Defendant assigned Plaintiff to work.

63. There are two doors to the department.

64. On the day the damage was discovered, Plaintiff entered through the back door and did not have an obligation to unlock the front door until 7:30 a.m.

65. Plaintiff to work arrived at approximately 7:20 a.m.

66. Upon arrival and before 7:30 a.m., Easterling confronted Plaintiff about the damage to the front door.

67. Easterling issued Plaintiff a disciplinary write-up and terminated Plaintiff's employment for not reporting the damage, even though Plaintiff had never seen the damage and it was not time for him to open that door

68. In terminating Plaintiff's employment, Defendant did not follow its own policy regarding progressive discipline.

69. Defendant did not terminate a female employee, Kim Davis, that was issued numerous disciplinary write-ups.

70. In violation of Title VII, Defendant was substantially motivated by Plaintiff's sex, male, in terminating Plaintiff's employment.

71. As a result of Defendant's violation of the Title VII, Plaintiff has been damaged, suffering loss of pay, benefits and mental anguish.

**IX. COUNT FIVE – Race Discrimination – Title VII**

72. Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1-71 above.

73. Plaintiff is a white male.

74. Defendant hired Plaintiff on or about September 21, 2013.

75. Defendant terminated Plaintiff's employment on July 21, 2016.

76. Defendant terminated and/or constructively discharged Plaintiff's employment for the claimed reason that he did not report damage to the front door of the department where Defendant assigned Plaintiff to work.

77. There are two doors to the department.

78. On the day the damage was discovered, Plaintiff entered through the back door and did not have an obligation to unlock the front door until 7:30 a.m.

79. Plaintiff to work arrived at approximately 7:20 a.m.

80. Upon arrival and before 7:30 a.m., Easterling confronted Plaintiff about the damage to the front door.

81. Easterling issued Plaintiff a disciplinary write-up and terminated Plaintiff's employment for not reporting the damage, even though Plaintiff had never seen the damage and it was not time for him to open that door

82. In terminating Plaintiff's employment, Defendant did not follow its own policy regarding progressive discipline.

83. Defendant did not terminate a black employee, Kim Davis, that was

issued numerous disciplinary write-ups.

84. In violation of Title VII, Defendant was substantially motivated by Plaintiff's race, white, in terminating Plaintiff's employment.

85. As a result of Defendant's violation of Title VII, Plaintiff has been damaged, suffering loss of pay, benefits and mental anguish.

## VII. PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays for the following relief:

A. Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting in concert with the Defendant and at the Defendant's request from continuing to violate the terms of the ADA and Title VII;

B. Enter an Order requiring the Defendant to make Plaintiff whole by awarding him the position he would have had, had he not been discriminated against;

C. Award him back pay, together with employment benefits, front pay; compensatory damages; punitive damages; special damages; nominal damages;

D. Attorneys' fees and costs;

E. Plaintiff requests that the Court award Plaintiff equitable relief pursuant to 28 U.S.C. § 2201, 42 U.S.C. 2000e *et seq.* and 42 U.S.C. § 12101 and that the actions of Defendant are violate the law; and,

F.	Any different or additional relief as may be determined by the Court to which Plaintiff is entitled.

_____
ALLEN D. ARNOLD

_____
KIRA FONTENEAU


OF COUNSEL:

FONTENEAU & ARNOLD, LLC
2151 Highland Avenue South, Ste. 110
Birmingham, Alabama 35205
(205) 252-1550 – Office
(205) 502-4476 – Facsimile


**PLAINTIFF REQUESTS TRIAL BY STRUCK JURY**

_____
OF COUNSEL

**DEFENDANT'S ADDRESS**:
Health Services, Inc.
c/ Catia Perry
1845 Cherry Street
Montgomery, AL 36107

11